UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
GEORGE KOFINAS & MARIA KOFINAS,   :
                                 :
     Plaintiffs,            :
                                 :   20-cv-7500 (JSR)
       -v-                :
                                 :   <u>OPINION</u>
FIFTY-FIVE CORP., et al.,     :
                                 :
     Defendants.          :
                                 :
-----------------------------------x

JED S. RAKOFF, U.S.D.J.

George and Maria Kofinas lease three commercial units on the ground floor of Fifty-Five Central Park West, a residential cooperative in Manhattan. Plaintiffs allege that the Board of Directors of the cooperative were aware that water was leaking into their units through cracks in the sidewalk and the foundation walls. Plaintiffs further allege that, against the advice of the building architect, defendants pursued a quick-fix solution -- sidewalk caulking and interior sealant -- rather than a more durable solution like repairs to the sidewalk and foundation walls. This left plaintiffs' units vulnerable, plaintiffs' claim, and the leaks eventually returned, causing water damage and mold, and requiring plaintiffs to close their business, a fertility clinic. Meanwhile, plaintiffs allege, the cooperative spent millions of dollars on luxuries for the residential tenants, like a roof garden.

Plaintiffs filed this lawsuit against Fifty-Five Corporation, the owner of the building, as well as the members of its Board of Directors at the pertinent times and the building's managing agent. Plaintiffs bring six counts: breach of contract and negligence, against the cooperative; breach of fiduciary duty and tortious interference with contract, against the Board members; and aiding and abetting the alleged breach of fiduciary duty and the alleged tortious interference with contract, against the managing agent.

Now before the Court are defendants' two motions to dismiss. The defendants contend that the Court lacks subject matter jurisdiction because the plaintiffs lack standing since, defendants contend, the alleged damages were suffered by plaintiffs' professional corporation, not by plaintiffs personally. The defendants also contend that the Amended Complaint does not state a claim against the individual defendants because those defendants are protected by the business judgment rule and by a New York doctrine that shields individual board members against liability for a corporation's alleged breach of contract. Finally, defendants contend that the Amended Complaint fails to adequately state its claim for punitive damages.

On January 29, 2021, by bottom-line order, the Court denied the motion to dismiss for lack of subject matter jurisdiction, granted the motion to dismiss for failure to state a claim with respect to Count Four, Count Six, and all claims for punitive

damages, and otherwise denied the motions to dismiss.  This Opinion explains the reasons for that ruling.

BACKGROUND

The Amended Complaint, ECF No. 65 ("Am. Compl."), contains the following allegations, which the Court presumes to be true for purposes of this motion only.

Plaintiffs George and Maria Kofinas jointly own the stock and are the lessees of the Proprietary Leases allocable and appurtenant to units 1B, 1C, and 1D/HW (the "Units") at 55 Central Park West (the "Building"), a residential cooperative owned by defendant Fifty-Five Corp. (the "Corporation").  Am. Compl. ¶¶ 36, 37. Plaintiffs operate fertility clinics, laboratory centers, and surgical centers in Manhattan, Brooklyn, and Staten Island.  Id. ¶ 36.  Plaintiffs reside in New Jersey.  Id. ¶¶ 36, 84.

Defendants Peter N. Greenwald, Jane Majeski, Paul J. "PJ" Mode, Stephen Farinelli, Dr. Ronald Blum, David Hendin, Marc Lasry, Robin Baum, Stewart Lipson, Sean Gallagher, Meredith Segal, David Cudaback, Paula Dagen, Lauren Helm, Paula Wardynski, Jeffrey Levy, and John Santoleri (the "Board Members") were members of the Board of Fifty-Five Corporation during the period covered by the Amended Complaint.  Id. ¶¶ 12, 15-35.  Defendants Frederick Rudd and Rudd Realty Management Corp. (collectively, the "Managing Agent") served as managing agent for the Building.  Id.  ¶¶ 13-14. Defendants reside in -- or, for corporate defendants, are

3

incorporated and have their principal place of business in -- New York.  Id. ¶¶ 12-35.

Plaintiffs purchased the Units in 2014 and 2015, planning to combine the Units and renovate them into a single fertility clinic. Id. ¶ 38.  The Units sit slightly below sidewalk level.  By October 2014, the Board Members had learned that water was penetrating from under the Central Park West sidewalk into the Units, but they did not tell plaintiffs.  Id. ¶¶ 42-50.  Plaintiffs began renovating and combining the Units, and their contractors discovered the water penetration.  Id. ¶¶ 52-57.

In or around October 2015, at plaintiffs' request, John Wender, the Building's architect, inspected the exterior foundation walls and determined that there was a structural problem:  moisture from "perched water" three feet below the sidewalk was seeping into the Units.  Id. ¶¶ 61-62.  The architect advised the Managing Agent, Rudd, and at least one Board member, Greenwald, that "re-caulking is cheap and quick" but "the water is more likely subterranean."  Id. ¶ 62 & Ex. F.  Wender explained, "Short of tearing up the side walk, or elaborate injection systems, an interior gutter is a possible fix."  Id.

Plaintiffs allege that "the Corporation did not wish to allocate the funds required to perform the necessary work to permanently waterproof the Units because the Corporation preferred to allocate the money to other projects, including a lobby

4

renovation." Id. ¶ 57.  The architect therefore recommended that plaintiffs apply Aquafin, a sealant, to the fertility clinic's interior walls as a temporary solution, and plaintiffs did so. Id. ¶ 58.  The Board Members chose to allocate $9,500 to re-caulk the sidewalk (the method the architect had described as "cheap and quick") but did not authorize more extensive repairs.  Id. ¶ 66. At the same Board meeting, which several of the defendant Board Members, as well as defendant Rudd, attended, the Board allocated $250,000 to create a rooftop garden.  Id. ¶ 67 & Ex. H.  Around that time, the Board allocated millions of dollars to a variety of other capital improvement projects that would improve the quality of life for residential unit owners, with no benefit to the plaintiffs as commercial unit owners (e.g., a $1.5 million lobby beautification project, a $300,000 new roof).  Id. ¶¶ 84, 106-108.

Plaintiffs finished merging and renovating the Units, and their fertility clinic opened in February 2017.  By at least December 2017, the Board Members learned that the structural steel columns beneath the Units were degraded, and the Board hired an engineer to investigate.  Id. ¶¶ 76-81.  In June 2018, at the annual shareholder meeting, the Board Members reported to the shareholders that a structural engineer determined that water was rusting the columns, causing brick to separate; the Board Members ordered that the columns be reinforced.  Id. ¶ 81.

The temporary sealant that plaintiffs applied to their interior walls eventually failed, and water penetrated the clinic again in July 2019, causing buckling and squishing floors, odors, water bugs, wet walls, and mold. Id. ¶¶ 4, 86-91, 138-148. In October 2019, the Board Members directed an engineer to perform a water test. Id. ¶ 92. Following the test, the engineer recommended "removing the sidewalk flags along the building wall to allow the foundation wall to be waterproofed and install[ing] a new sidewalk to match [the] existing [one]." Id. ¶ 93. One of the Board Member defendants, Greenwald, then promised plaintiff George Kofinas that the building would undertake these repairs immediately after the 2019 Thanksgiving Parade, id. ¶ 96, and the November 2019 Board meeting minutes likewise report that "[p]lans and specifications . . . for fixing the water penetration from the sidewalk into the Fertility Clinic are in process," id. ¶ 97 (emphasis deleted).

But those repairs never happened. Id. ¶ 99. Based on "ongoing discussions between the Board and Rudd Management," the Board instead began the "New Façade Project," ostensibly to address "new and persistent leaks" in residential units on higher floors. Id. ¶ 111 & Ex. L. The New Façade Project and the sidewalk and foundation repair were mutually exclusive because the New Façade Project required a sidewalk bridge. The Board told plaintiffs that the sidewalk and foundation repairs would need to wait until

6

after the New Façade Project, repeatedly rejecting plaintiffs' requests to reverse the sequencing. Id. ¶¶ 102-104, 120.

In February 2020, the Corporation claimed through its attorney Phyllis Weisberg that the leaks into the fertility clinic were related to the façade and thus plaintiffs would benefit from the New Façade Project. Id. ¶ 116. Plaintiffs allege that the Board Members caused Weisberg to make this claim and that it was false. Id. ¶¶ 114-121. Plaintiffs then instituted an Article 78 proceeding in New York Supreme Court, seeking to invoke their right as shareholders to inspect certain records. In August 2020, Board Member Greenwald submitted an affidavit in that proceeding, averring that plaintiffs had caused the water penetration issues and that, in any event, the issues had been cured; Weisberg submitted an attorney affirmation also claiming the water penetration issues had been cured. Id. ¶¶ 123-132. Plaintiffs allege that these statements were untrue and contradicted by, among other things, Weisberg's prior, February 2020 letter.

In February 2020, plaintiffs retained an indoor environmental consultant, who confirmed the presence of elevated levels of mold spores in the Units, including in the air conditioning ducts. Plaintiffs closed the clinic to conduct internal repairs. Id. ¶¶ 146-147. Plaintiffs allege that this closure was caused by the leaks and mold, not by the COVID-19 pandemic. Id.

7

Plaintiffs filed this suit on September 14, 2020.  Defendants moved to dismiss under Rule 12(b)(6) on November 20, 2020, ECF No. 62, and plaintiffs filed the operative Amended Complaint on December 4, 2020, ECF No. 65.  Defendants supplemented their motion to dismiss to address the Amended Complaint on December 10, 2020, ECF No. 66, and filed a second motion to dismiss under Rule 12(b)(1) on December 22, 2020, ECF No. 67.  Both motions to dismiss are now fully briefed.

LEGAL STANDARDS

Under Article III, federal courts may exercise subject matter jurisdiction only over actual cases and controversies.  Article III standing requires injury-in-fact, causation, and redressability.  Carter v. HealthPort Technologies, LLC, 822 F.3d 47, 55 (2d Cir. 2016).  District courts may rely upon the allegations of the complaint when assessing standing at the motion to dismiss stage, but if the defendant proffers material, controverted evidence extrinsic to the complaint, then "the district court will need to make findings of fact in aid of its decision as to standing." Id. at 57.

On a motion to dismiss for failure to state a claim, a court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party.  See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  To withstand a motion to dismiss under Rule 12(b)(6), the plaintiff

8

must plead facts to state a claim for relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Dismissal is inappropriate where a plaintiffs' allegations are "enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The Court may consider exhibits to the operative complaint because "the complaint is deemed to include any written instrument attached to it as an exhibit."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

ANALYSIS

I.   Lack of Subject Matter Jurisdiction

    A.   *Standing*

The Court begins with the second motion to dismiss, which argues that the Court lacks subject matter jurisdiction because the Kofinas Fertility Group, P.C., a New York State Professional Corporation that plaintiffs own, operated the fertility clinic located in the Kofinas Units and is therefore, defendants argue, "the real party in interest to the damages herein . . . and not Plaintiffs in their individual capacities."  Mem. in Support of Second Mot. to Dismiss, ECF No. 67-12 ("Second MTD"), at 4.  While lack of standing is not always the equivalent of lack of subject matter jurisdiction, here, where jurisdiction is predicated on diversity of citizenship, the two merge.

Because diversity jurisdiction is the sole constitutional basis for this civil action, plaintiffs must plead standing under both New York law and Article III of the Federal Constitution. For present purposes, New York standing law is no stricter than Article III. See Saratoga Cty. Chamber of Commerce, Inc. v. Pataki, 100 N.Y.2d 801, 812 (2003) (explaining that New York courts "requir[e] that the litigant have something truly at stake in a genuine controversy"); Siegel N.Y. Prac. § 136 (6th ed. 2020) ("[Under New York law,] [o]rdinarily, only the most officious interloper should be ousted for want of standing."). Thus, if there is Article III standing, there is also standing under New York law.

Article III standing requires that a plaintiff demonstrate (1) an injury-in-fact that is (2) fairly traceable to the defendants and (3) redressable by the Court. Carter v. HealthPort Technologies, LLC, 822 F.3d 47, 55 (2d Cir. 2016). Defendants do not challenge the second and third elements, which are plainly present: if plaintiffs demonstrate that defendants wrongfully delayed repairs, in violation of contractual obligations and/or fiduciary duties, then plaintiffs have plausibly pleaded that the subsequent water damage and/or business losses were caused by those breaches. And monetary damages would, of course, redress those wrongs.

10

As to the first element -- injury in fact -- defendants devote most of their brief to the argument that only Kofinas Fertility Group, and not plaintiffs in their individual capacities, suffered an injury in fact because "the property that was damaged appears to have belong [sic] to the medical clinic and not Plaintiffs in their individual capacity." Second MTD 10-11.   The   problem with defendants' argument is simple: the complaint alleges, and defendants do not dispute, that plaintiffs (not Kofinas Fertility Group) lease the Units, signed the contract that was allegedly breached, and are the shareholders to whom a fiduciary duty is allegedly owed.

Defendants argue that plaintiffs did not suffer the alleged lost business income and have not proved that they paid for certain alleged renovation work.   They invite the Court to wade into a detailed debate concerning these various categories of damages. However, that is an issue of fact to be resolved at a later stage on a fuller record.   The question presented here is standing, and it is not a close call.   Plaintiffs have alleged water damage to the Units that they, not Kofinas Fertility Group, lease, and defendants do not dispute, for present purposes, that plaintiffs lease the Units or that water damage occurred.   The alleged damage to real property in which plaintiffs hold an interest constitutes injury in fact.

Accordingly, the Court denies defendants' motion to dismiss that claims that the Court lacks subject matter jurisdiction and/or that plaintiffs lack standing.

*B. Necessary Party*

Although defendants' argument is written in terms of standing, defendants also point out several times that Kofinas Fertility Group is a New York citizen. That point is irrelevant to standing, so the Court infers that defendants may also be attempting to argue (though they did not explicitly do so) that Kofinas Fertility Group is a necessary party pursuant to Federal Rule of Civil Procedure 19(a)(1), and that its joinder would defeat diversity. Rule 19(a)(1) provides that a person is a necessary party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The Second Circuit has explained that

> [a] necessary party must be joined as a party to the action unless joinder would deprive the court of subject matter jurisdiction. In those circumstances, the court must assess whether in equity and good conscience, the

12

action should proceed among the existing parties or should be dismissed by considering the factors provided in Rule 19(b).

Washington Nat'l Ins. Co. v. OBEX Grp. LLC, 958 F.3d 126, 134-35 (2d Cir. 2020) (internal quotation marks and citation omitted).

Kofinas Fertility Group is not a necessary party under either Rule 19(a)(1)(A) or Rule 19(a)(1)(B). With regard to Rule 19(a)(1)(A), Kofinas Fertility Group's presence is not necessary for the Court to accord complete relief among the existing parties. If plaintiffs prevail, then they, personally, may recover from defendants; their ownership of a professional corporation is irrelevant. Under Rule 19(a)(1)(B), Kofinas Fertility Group might have "an interest" in these proceedings. But it has not "claim[ed] an interest." Fed. R. Civ. P. 19(a)(1)(B) (emphasis added). Under the law of this Circuit, failure to claim an interest prevents the Kofinas Fertility Group from being a necessary party under Rule 19(a)(1)(B). See Washington Nat'l Ins. Co., 958 F.3d at 135 (explaining that the third party "must claim an interest for Rule 19(a)(1)(B) purposes") (alterations normalized and internal quotation marks omitted); accord Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir. 1996) ("[S]atisfying the second prong of Rule 19(a) is 'contingent [ ] upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action.'") (quoting with approval Northrop

Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir. 1983)).

Accordingly, this case can proceed without Kofinas Fertility Group, and diversity remains complete.

II.  Failure to State a Claim

Defendants' other motion to dismiss challenges Counts Three through Six, arguing pursuant to Rule 12(b)(6) that they fail to state a claim upon which relief can be granted.  These four claims were filed against various individual defendants, not the Corporation.  Defendants' brief is not a paragon of clarity, but the Court discerns two overarching arguments.  First, defendants contend that plaintiffs merely disagree with defendants' ordinary business judgments, so the business judgment rule protects the Board Members against liability.  Second and relatedly, defendants argue that the Board Members are protected by a New York doctrine that shields Board Members from liability for alleged misconduct undertaken in the Board Members' capacities as Board Members.  The Court considers these two arguments in turn.

*A.   The Business Judgment Rule*

The business judgment rule, which New York has long followed with respect to corporate boards, applies also to decisions made by the board of a residential cooperative.  The seminal case is Levandusky v. One Fifth Ave. Apt. Corp., 75 N.Y.2d 530 (1990). Levandusky established that, "[i]n the context of cooperative

14

dwellings, the business judgment rule provides that a court should defer to a cooperative board's determination '[s]o long as the board acts for the purposes of the cooperative, within the scope of its authority and in good faith.'" 40 W. 67th St. Corp. v. Pullman, 100 N.Y.2d 147, 153 (2003) (quoting Levandusky, 75 N.Y.2d at 538). Nevertheless, Levandusky is not a "rubber stamp," and courts have found that "arbitrary or malicious decision making or decision making tainted by discriminatory considerations is not protected by the business judgment rule." Fletcher v. Dakota, Inc., 99 A.D.3d 43, 48 (1st Dep't 2012). Levandusky itself recognized that "the broad powers of a cooperative board hold potential for abuse through arbitrary and malicious decision making, favoritism, discrimination and the like." Levandusky, 75 N.Y.2d at 536.

The principal issue here is whether plaintiffs have plausibly alleged "favoritism," id., because in such cases New York courts have declined to apply the protections of the business judgment rule. New York courts do not require allegations of self-dealing; "pleading unequal treatment of shareholders will suffice" at the motion to dismiss stage. Bryan v. W. 81 St. Owners Corp., 186 A.D.2d 514, 515 (1st Dep't 1992).

A First Department case, Louis & Anne Abrons Foundation, Inc. v. 29 E. 64th St. Corp., 297 A.D.2d 258, 260 (1st Dep't 2002), is instructive. In Louis & Anne Abrons Foundation, a residential

15

cooperative imposed a new subleasing fee, but the only unit that was permitted to sublease in the first place was the commercial unit. Plaintiff, owner of the commercial unit, contended that it was singled out for inferior treatment, and that the business judgment rule should not apply. The trial court granted summary judgment for the defendants, but the First Department reinstated the complaint, finding that "plaintiff has presented sufficient evidence to raise a triable issue of fact as to whether the sublet fee was imposed in bad faith and meant to solely impact plaintiff," thus preventing application of the business judgment rule. Id. at 261.

Here, plaintiffs allege something similar: that the defendant Board Members had known of leak issues in the Units since at least 2014, and that in 2015 the building's architect reported that there was a larger structural issue. Plaintiffs allege that, despite this knowledge, the Board then chose to pursue projects to advance the interests of residential shareholders, while not addressing a substantial structural issue affecting plaintiffs. Further, plaintiffs allege that in 2019-2020, aware of increasingly serious issues affecting plaintiffs' Units (rusting steel support beams, mold, and the like), the Board still advanced residential tenants' interests over the interests of the plaintiffs -- even though, plaintiffs allege, the Board characterized the residential tenants' leaks as "new," unlike the plaintiffs' longstanding and

16

increasingly serious leaks.   Following Louis & Anne Abrons Foundation, and drawing all reasonable inferences in plaintiffs' favor as the Court must at this stage, the Court holds that plaintiffs have plausibly alleged that defendants allegedly favored residential tenants over commercial tenants in bad faith. Therefore, at this stage, the Court finds that the business judgment rule does not bar plaintiffs' claims.

   B.   *Board Members' Acts in Scope of Employment*

   Counts Four and Five target only the Board Member defendants. Those defendants seek dismissal of those claims, arguing that they cannot be held liable because they took the challenged acts on behalf of the Corporation and plaintiffs pleaded no independent tortious acts.

   Defendants claim that "Plaintiffs are required to plead with specificity independent tortious acts by each individual defendant."  Supp. Mem. in Support of First Mot. to Dismiss, ECF No. 66, at 11 (citing Pelton v 77 Park Ave. Condominium, 38 A.D.3d 1 (1st Dep't 2006)).  However, Pelton was overturned in pertinent part.  As the First Department later explained, "Pelton failed to disentangle the principles of individual corporate director liability in the breach of contract context (understood to provide a shield against liability) from the principles applicable to tort cases (where there is no such shield)."  Fletcher v. Dakota, Inc., 99 A.D.3d 43, 50 (1st Dep't 2012).

17

Given that New York courts apply this "shield" only against contract claims, Counts Three and Four are not similarly situated. Count Three (breach of fiduciary duty) alleges a tort, so "there is no such shield." See id. If defendants breached their fiduciary duties, even while acting as agents of the corporation, then New York principles of individual corporate director liability do not preclude plaintiffs' recovery against them. Therefore, Count Three states a legally sufficient claim (as does Count Five, which charges the Managing Agent with aiding and abetting the alleged breach of fiduciary duty).

However, Count Four seeks damages for tortious interference with contract. While tortious interference with contract is nominally a tort, the gravamen of the tort is simply that the defendant intentionally induced a third party to breach a known contract, causing damages. See Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413 (1996). Here, that third party is the Corporation, on whose behalf the Board Members were acting. Under these circumstances, New York principles of corporate liability shield the Board Members from liability, absent allegations of tortious conduct independent of the Board Members' actions qua Board Members. See Fletcher, 99 A.D.3d at 50 (internal quotation marks and citation omitted) ("[A] corporate officer will not be held liable for inducing the breach of a contract between the corporation and a third party if he committed no independent torts

or predatory acts . . . independent of that tort [of interference with contract]."). Thus, New York principles of corporate liability bar the claim for tortious interference with contract.

For these reasons, Count Four fails to state a claim as a matter of law, and the Court dismisses that claim. Count Six charges the Managing Agent with aiding and abetting the tortious interference with contract alleged in Count Four. Count Six is, thus, derivative of Count Four and is also dismissed. At this stage, however, these dismissals are without prejudice, as plaintiffs theoretically could allege facts in an amended complaint that would cure the defects.

C. *Punitive Damages*

Finally, defendants move to dismiss each count insofar as it seeks punitive damages. The parties' citations to lower court cases offer mixed authority regarding when punitive damages are available under New York law. These opinions reflect a broader confusion in the New York case law. <u>See generally</u> Kevin Schlosser, <u>Clarifying Punitive Damage Confusion</u>, N.Y.L.J. (Jan. 22, 2008).[1]

One source of confusion is that New York law treats differently a case sounding purely in tort and a case having "its genesis in the contractual relationship between the parties." <u>New York Univ. v. Cont'l Ins. Co.</u>, 87 N.Y.2d 308, 16 (1995). Here,

---

[1] Available at https://www.msek.com/publication/clarifying-punitive-damage-confusion.

plaintiffs' claims all have their genesis in the contractual relationship between the plaintiffs, as lessees, and the Building, as lessor.  See, e.g., Rocanova v. Equitable Life Assur. Soc. of U.S., 83 N.Y.2d 603, 613 (1994) (applying the doctrine even though "the conduct constituting, accompanying, or associated with the breach of contract" included alleged fraud).

In a pair of opinions in 1994 and 1995, the New York Court of Appeals clarified when punitive damages are available under New York law in cases having their genesis in a contractual relationship:

> [D]amages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong, but . . . punitive damages may be recoverable if necessary to vindicate a public right.  Punitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as "gross" and "morally reprehensible," and of "such wanton dishonesty as to imply a criminal indifference to civil obligations[.]" We set forth in the decision the pleading elements required to state a claim for punitive damages as an additional and exemplary remedy when the claim arises from a breach of contract.  They are: (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in [Walker v. Sheldon, 10 N.Y.2d 401, 404-405 (1961)]; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally.

New York Univ., 87 N.Y.2d at 315-16.

As noted, this Court finds that plaintiffs' claims for breach of fiduciary duty and for aiding and abetting the breach of

fiduciary duty survive the motion to dismiss, and defendants do not challenge the claim for negligence at this stage.  Therefore, as to each defendant, plaintiffs have plausibly alleged misconduct that is "actionable as an independent tort."  See New York Univ., 87 N.Y.2d at 316.  However, plaintiffs' allegations do not amount to tortious conduct as "part of a pattern directed at the public generally."  See id.  While members of the public might arguably be harmed by the alleged water damage if the fertility clinics remained open, plaintiffs do not allege that defendants' conduct was "directed" at anyone other than plaintiffs, let alone "at the public generally."

Instead, plaintiffs argue that they need not show a public wrong.  The First Department held in a 2003 case that a "punitive damages claim is viable in light of the tort cause of action for breach of fiduciary duty; a public wrong is not required."  Kleinerman v. 245 E. 87 Tenants Corp., 105 A.D.3d 492, 493 (2013) (citing Bishop v. 59 W. 12th St. Condominium, 66 A.D.3d 401 [1st Dep't 2009)).  The claims in Kleinerman and Bishop had their genesis in a contractual relationship indistinguishable from the relationship in this action, so these cited cases conflict with Rocanova and New York University, the 1994 and 1995 Court of Appeals cases cited above.  However, Kleinerman and Bishop neither applied nor distinguished Rocanova and New York University, and, more important, this Court has found no Court of Appeals case

overturning those precedents.  This Court is bound to follow Rocanova and New York University, precedent issued by New York's highest court, rather than the contrary decisions of lower courts. See TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 94 & n.12 (2d Cir. 2005) (noting conflicting case law on this issue but concluding that the rule articulated in Rocanova "has not been changed by the Court of Appeals, and we have no reason to question its continued vitality").

Because plaintiffs have not alleged a pattern of misconduct directed at the public, plaintiff cannot recover punitive damages, so all claims for punitive damages are dismissed (though again these dismissals are, at this stage, without prejudice).

For these reasons, the Court, by order dated January 29, 2021, granted without prejudice defendants' motion to dismiss for failure to state a claim with respect to Counts Four and Six (tortious interference with contract and aiding and abetting the same) and all claims for punitive damages, and denied defendants' motions to dismiss in all other respects.

SO ORDERED.

Dated:     New York, NY
           February 16, 2021            _____
                                        United States District Judge