UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE D. KOFINAS AND MARIA P. KOFINAS,<br><br>                              Plaintiffs,<br><br>   -against-<br><br>FIFTY-FIVE CORPORATION, PETER N. GREENWALD, RUDD REALTY MANAGEMENT CORP., FREDERICK J. RUDD, JANE MAJESKI, PAUL J. "PJ" MODE, STEPHEN FARINELLI, DR. RONALD BLUM, DAVID HENDIN, MARC LASRY, ROBIN BAUM, STEWART LIPSON, SEAN GALLAGHER, MEREDITH SEGAL, DAVID CUDABACK, PAULA DAGEN, LAUREN HELM, PAULA WARDYNSKI, JEFFREY LEVY AND JOHN SANTOLERI,<br><br>                              Defendants. | Civil Action No.: 1:20-cv-07500 (JSR) |

**PRETRIAL CONSENT ORDER**

Pursuant to the Court's Individual Rules of Practice, Plaintiffs George D. Kofinas and Maria P. Kofinas (collectively, "Plaintiffs") and Defendants Fifty-Five Corporation (the "Corporation" or "Fifty-Five Corp."), Rudd Realty Management Corp. ("RRMC"), Frederick J. Rudd ("Rudd"), Peter N. Greenwald, Paul J. "PJ" Mode, Stephen Farinelli, Dr. Ronald Blum, David Hendin, Marc Lasry, Robin Baum, Stewart Lipson, Sean Gallagher, Meredith Segal, David Cudaback, Paula Dagen, Lauren Helm, Paula Wardynski, Jeffrey Levy and John Santoleri (collectively, the "Individual Defendants" and, together with Fifty-Five Corp, RRMC and Rudd, the "Defendants"), by and through their undersigned attorneys, respectfully submit the following Pretrial Consent Order.

1

## I. Joint Overview of Case

Plaintiffs are non-residential shareholders and owners of three ground floor professional units (collectively, the "Units") in a residential cooperative located at 55 Central Park West (the "Building"). Plaintiffs have asserted claims against the cooperative (Fifty-Five Corp.), past and present members of the cooperative's board of directors (the "Individual Defendants") and the cooperative's managing agent (RRMC) and its principal (Rudd), arising out of water penetration into the Plaintiffs' Units in which they operate a fertility clinic (the "Clinic"). Plaintiffs allege that after being put on notice of serious structural issues with the Building's foundation walls (which form the outer envelope of the Clinic) that allowed water to penetrate the Clinic, the cooperative failed to meaningfully address the problem and, instead, directed the cooperative's money and focus on capital improvements designed to improve the quality of life of the residential shareholders such as an extravagant rooftop garden that cost $250,000 and a lavish lobby renovation that cost more than $1.5 million. When water again penetrated the Clinic three years later, Plaintiffs allege that the cooperative once again elected to favor the residential shareholders by embarking on a façade project designed to address leaks in the residential apartments. The new façade project utilizes a sidewalk shed which prevents, to this day, the repairs recommended by the cooperative's architect and engineer to permanently address the water penetration issues at the Clinic.

Defendants dispute Plaintiffs claims and have raised a number of defenses. Defendants allege that they acted reasonably with respect to how they responded to the water penetration, used proper business judgment when determining how to address the needs of the shareholders, were fiscally responsible with respect to the projects that were undertaken and treated Plaintiffs in the same manner as the other shareholders in the building. Additionally, Defendants allege

that Plaintiffs failed to mitigate their damages when they discovered the reoccurrence of water and claim that Plaintiffs did not act reasonably to protect their property.

**II.     Particularized Description of Each Party's Remaining Claims and Counterclaims**

Plaintiffs' remaining claims are as follows:

1. **First Cause of Action:** Plaintiffs' First Cause of Action is for breach of contract against Defendant Fifty-Five Corp.  In particular, Plaintiffs allege, *inter alia*, the Defendant Fifty-Five Corp. breached the terms of three proprietary leases entered into between Plaintiffs and Defendant Fifty-Five Corp. (collectively, the "Proprietary Leases") by (a) failing to keep the foundations and the sidewalks of the Building in good repair despite its knowledge of the defects in the foundations and sidewalks of the Building and despite Plaintiffs' notice to Fifty-Five Corp. of these defective conditions; (b) failing to maintain the Building as a first-class apartment building; and (c) interfering with Plaintiffs' quiet enjoyment of the Units.

2. **Second Cause of Action:** Plaintiffs second cause of action is for negligence against Defendant Fifty-Five Corp.  In particular, Plaintiffs allege that Fifty-Five Corp. has a legal duty to Plaintiffs under Multiple Dwelling Law §78 to keep the Building and the lot upon which it is situated in good repair and a common law duty and obligation to Plaintiffs to exercise reasonable care with respect to keeping the Building safe and that Fifty-Five Corp. breached these duties.

3. **Third Cause of Action:** Plaintiffs' third cause of action is for breach of fiduciary duty against the Individual Defendants.  In particular, Plaintiffs allege that the Individual Defendants owed a fiduciary duty to Plaintiffs as shareholders in the residential cooperative, including duties of fairness, disclosure, candor and good and prudent management of the Corporation, which the Individual Defendants breached, by, *inter alia*, (a) failing to address structural defects in the Building that allowed water penetration into the Plaintiffs' Units; (b)

failing or refusing to follow the advice and recommendations of the Corporation's engineers and architects with respect to addressing the water penetration at Plaintiffs' Units; (c) prioritizing projects designed to enhance the quality of life of the residential shareholders over performing exterior repairs necessary to address the water penetration issues at Plaintiffs' Units; (d) creating misleading board minutes that either misrepresented the structural issues that allowed water to penetrate the Building's foundation walls or omitted important facts regarding those issues; (e) allowing Plaintiffs to resume the combination and gut renovation of three professional Units based upon the Corporation's commitment to make necessary exterior repairs to address water penetration issues at Plaintiffs' Units; (f) failing to disclose to the Plaintiffs and the Corporation's architect and engineer the reports of the Corporation's structural engineer that specifically identified moisture penetrating the Building's foundation walls and its impact on the structural elements of the Building including the Building's cement slab that served as the floor to Plaintiffs' Units; (g) failing to disclose to the Plaintiffs and the Corporation's architect and engineer the impact of periodic steam leaks from the Con Edison steam main located under the sidewalk adjacent to Plaintiffs' Units; and (h) embarking on a new façade project in 2020 that utilized a sidewalk bridge -- which necessarily prevented remedial exterior work outside the Plaintiffs' Units – in order to address leaks in residential apartments, including the apartments of several former board members, notwithstanding notice to the Corporation that Plaintiffs' Clinic had debilitating mold conditions and that the Corporation had committed to exterior repairs to address water penetration at Plaintiffs' Units five years earlier.

4. **Fifth Cause of Action:** Plaintiffs last remaining and fifth cause of action is for aiding and abetting Breach of Fiduciary Duty against Defendants RRMC and Rudd. In particular, Plaintiffs claim that Defendants RRMC and Rudd aided and abetted in the Individual

Defendants' breaches of their fiduciary duties by, *inter alia*, knowingly participating in the Individual Defendants' breaches including those set forth above.

### III. Particularized Statement of the Specific Facts, Stipulations, Admissions and Other Matters on which the Parties Agree

Pursuant to the Individual Rules of Practice of the Honorable Jed S. Rakoff, Plaintiffs and Defendants, by and through their undersigned attorneys, respectfully submit the following Statement of Facts on Which the Parties Agree:

A. **The Parties**

1. <u>Plaintiffs</u>: Plaintiffs Dr. George Kofinas and Dr. Maria Kofinas, who are citizens of the State of New Jersey, own the stock appurtenant to three Units at the Building in which they operate the Clinic.

2. <u>Defendants:</u>

    a. Fifty-Five Corp.: Defendant Fifty-Five Corp. is a cooperative housing corporation organized and existing under the laws of the State New York. The Corporation owns the Building.

    b. Individual Defendants: The Individual Defendants are and/or were members of the board of directors of the Corporation as set forth in the board meeting minutes to be introduced as exhibits.

    c. RRMC: RRMC is a corporation organized under the laws of the State of New York and its principal place of business is located in Manhattan. RRMC is and was, at all pertinent times, the managing agent for the Building.

    d. Rudd: Defendant Rudd is an individual who is domiciled in and is a citizen of the state of New York. Rudd is the principal of RRMC

and an expert in residential cooperative administration and procedure. At all pertinent times, Rudd acted on behalf of RRMC as managing agent for the Building. Rudd is also the assistant secretary of the Corporation.

**B.     Underlying Circumstances**

1. Plaintiffs and Defendant Fifty-Five Corp. are parties to three Proprietary Leases for Units 1B, 1C and 1D/HW dated June 25, 2014, June 25, 2014 and November 30, 2015, respectively, which were signed by Plaintiffs and Defendant Greenwald on behalf of Defendant Fifty-Five Corp.

2. Plaintiffs' Units are located below the sidewalk level.

3. Plaintiffs paid maintenance and special assessments pursuant to the terms of the Proprietary Leases.

4. Plaintiffs' build-out of the Clinic started in 2015.

5. In or about 2015, water penetrating into the Units was discovered.

6. It was observed that water was entering the Units through cracks in the sidewalk and the Building's envelope and seeping into the Units.

7. Plaintiffs reported the water penetration to Fifty-Five Corp., RRMC, Rudd and the Individual Defendants.

8. In or about July 2019, water penetrating the Units was discovered.

9. Plaintiffs notified Fifty-Five Corp., RRMC, Rudd and the Individual Defendants of the water penetration.

10. To date, the waterproofing of the foundation walls below the sidewalk, the removal of the Building's stones between the sidewalk and the windows

6

                of the Clinic to allow for waterproofing behind such stones, the repair of the sidewalks outside the Clinic and other work necessary to permanently address the water penetration at the Clinic, as recommended by the Corporation's architect and engineer in October 2019, have not occurred.

      11.    Defendants performed water testing in October 2019 and retained an engineer to formulate a plan to address the issues.

      12.    Plaintiffs have reopened their offices at the location.

## IV. Particularized Statement of the Injunctive Relief, Declaratory Relief, and/or Damages Claimed (including amounts) for Each Claim and Counterclaim to be Tried

### A. Plaintiffs' Compensatory Damages

Plaintiffs seek compensatory damages totaling $3,701,196.06, which is comprised of (a) business interruption damages amounting to approximately $2,172,060 in lost net income caused when Plaintiffs closed the Clinic from March 5, 2020 to August 5, 2020 to remediate the mold conditions discovered on the premises in February 2020 and confirmed in May 2020; (b) damages totaling $1,232,499.06 attributable to costs of the original buildout of the Clinic; and (c) damages totaling $296,637 attributable to the cost of the rebuild of the Clinic in 2020.

### B. Plaintiffs' Punitive Damages

In its February 16, 2021 opinion on Defendants' motions to dismiss, the Court dismissed Plaintiffs' request for punitive damages, without prejudice, holding that Plaintiffs had "not alleged a pattern of misconduct directed at the public." (2/16/21 Opinion at 22). However, Plaintiffs respectfully submit that the evidence learned through discovery and put forth at trial will demonstrate that Defendants engaged in a pattern of misconduct directed at the public to the extent that they (a) ignored multiple reports detailing (i) the deterioration of the Building's

7

structural elements including the steel columns, beams, foundation walls and concrete slab; and (ii) faulty fireproofing resulting from the separation of fireproofing brick encasement of structural columns; (b) created misleading board minutes for public and shareholder consumption that either misrepresented or omitted to disclose the true conditions of the structural elements of the Building; (c) refused to provide information regarding the Building's damaged structural elements to prospective purchasers of units at the Building; and (d) refused to address significant deterioration of structural elements that has allowed these conditions to remain unremediated for years and therefore punitive damages in an amount no less than $12 million are appropriate.

Defendants contend that Plaintiffs' claims for punitive damages have been dismissed and that there is no evidence establishing an entitlement to punitive damages.  Defendants also contend that the claim for punitive damages should remain dismissed.

### C. Injunctive Relief in Favor of Plaintiffs

While not requested in the Amended Complaint, Plaintiffs respectfully submit that the Court has plenary authority to make such Orders that will serve the interests of justice and may fashion an appropriate remedy that conforms to the evidence adduced at trial with respect to the Corporation's continued refusal and/or inability to even start the repairs recommended by its architects and engineers to (1) permanently address the water penetration into the Clinic; and (2) address the significant and dangerous deterioration of the Building's structural elements including the northeast steel column under the Clinic that supports the entire Building which has no fireproofing brick encasement and was found to have upwards of 35% section loss in September 2018, the spandrel beam that supports the Clinic which was found to be in significant distress in September 2018, the cement cinder slab that serves as both the basement ceiling and the floor of the Clinic, which was found to be in a state of distress in September 2018, and the

foundation walls of the Building.  The evidence obtained through discovery and to be presented at trial demonstrates, *inter alia*, that Plaintiffs have no adequate remedy at law with respect to future work required to be undertaken by the Corporation and that injunctive relief, in addition to damages resulting from past failures, is therefore proper.  Accordingly, Plaintiffs seek injunctive relief directing Defendants to: (a) remove the sidewalk and repair and waterproof the foundation wall of the Building in a manner taking into full account the close proximity of Con Ed's steam lines and the likelihood of future steam leaks; (b) restore and repair of the deteriorated structural steel columns and beams in the basement under the Clinic; (c) replace the fireproofing brick encasements on the columns that have separated due to rust, including the northeast column which is located underneath the Clinic; (d) investigate the circa 1930 cinder/cementitious structural slab on which the Clinic is situated which is uniquely susceptible to loss of structural integrity due to the corrosive effect of chronic water infiltration; and (e) should this investigation, including the taking of core samples, indicate the loss of structural integrity of the slab, shore up of the slab to protect against any structural collapse of the slab.

**V.      List of Witnesses the Parties Intend to Call**

    **A.      Plaintiffs' Witness List**

Plaintiffs intend to call the following witnesses in the following likely order of appearance:

1. John Wender;
2. Kamyar Biazar;
3. Justin Wilde;
4. Peter Greenwald;
5. Frederick Rudd;

6. William Struth;

7. Phyllis Weisberg;

8. Guglielmo "Bill" Ammatuna;

9. Anthony "Tony" Coen;

10. Edward Olmsted;

11. Dr. Herman Sabath;

12. Vidaris, Inc. by person most knowledgeable;

13. Marie Conille;

14. Dr. George D. Kofinas; and

15. Ted Carnevale.[1]

B. **Defendants' Witness List**

Judge Rakoff's Individual Rules of Practice provide: "A witness whose name appears on the list of more than one party will testify only once but may be examined at that time by all parties on all relevant matters." *See* Individual Rules of Practice ¶ 4(b)(vi). Accordingly, Plaintiffs will dictate the order in which Defendants will examine many witnesses, including many of Defendants' own witnesses whom Plaintiffs have asked to call in their case-in-chief. Based on Plaintiffs' list, Defendants provide the following list of the names of the witnesses that Defendants intend to call, either live or through deposition excerpts or former testimony (written or video/audio), in the likely order of appearance:

1. Demetrios Boutris; and

---

[1] Due to extenuating circumstances, with the Court's permission granted at the April 22, 2021 pretrial conference, the parties took Mr. Carnevale's testimony out of order in advance of the trial on May 20, 2021. Plaintiffs intend to present Mr. Carnevale's testimony by video.

2. Maria Kofinas – two (2) question and answers from Examination Before Trial to be read.

## VI.  Exhibit Lists and Objections

Plaintiffs' exhibit list and Defendants' objections thereto are attached as Exhibit A. Defendants' exhibit list and Plaintiffs' objections thereto are attached as Exhibit B.

## VII.  Final Estimate of the Length of Trial

The parties continue to estimate that the trial can be completed within five to six business days beginning on June 2, 2021 and ending on June 9 or 10, 2021.

| MANATT, PHELPS & PHILLIPS, LLP | FIXLER & LAGATTUTA LLP |
|---|---|
| By: s/Andrew L. Morrison<br>Andrew L. Morrison<br>Samantha J. Katze<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 790-4500<br>Facsimile: (212) 790-4545<br>Email: amorrison@manatt.com<br>Email: skatze@manatt.com | By: s/ Paul F. LaGattuta<br>Paul F. LaGattuta, III<br>Jack Brackney<br>120 Broadway Suite 1350<br>New York, New York 10271<br>Telephone: (212) 785-9800<br>Facsimile: (212) 785-9804<br>Email: paul.lagattuta@fixlerlaw.com<br>Email: jack.brackney@fixlerlaw.com |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |